[Civ. No. 16305. First Dist., Div. Two. Jan. 30, 1956.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Plaintiff and Respondent, v. ROSE CARR, Defendant and Respondent; SHERMAN LEE CARR et al., Defendants and Appellants.

Jay Jackson, Jr., and Merrill E. Steinberg for Defendants and Appellants.

Samuel B. Stewart, George Chadwick, Jr., and Ledger D. Free, Jr., for Plaintiff and Respondent.

Delany, Fishgold, Freitas & Rowe and Matthew M. Fishgold for Defendant and Respondent.

NOURSE, P. J.—This is an interpleader action instituted by the Bank of America National Trust and Savings Association (hereinafter called the Bank) against Rose Carr, Sherman Lee Carr, Rey Alexander Carr, and Norman N. Carr, as trustee for Sherman Lee Carr and Rey Alexander Carr. Sherman Lee and Rey Alexander are the minor sons of Rose and Norman. Hereinafter we will use the names Rose, Norman, son Sherman and son Rey. The main points

in dispute on this appeal relate to the serving of process on the defendants except Rose and to the jurisdiction of the court over them.

The complaint in two causes of action alleges the following conflicting claims. There were in the Bank two savings accounts in the name of Norman as trustee for the sons Sherman and Rey respectively. In a divorce action between Norman and Rose it was determined that said savings accounts were their community property and that they should be paid over to Rose. The balances of said accounts were transferred to accounts in the name of Rose, but each of the sons claims ownership of the account of which he had been named beneficiary and Norman claims ownership of both accounts as trustee.

On July 21, 1952, summons was issued directed to the four defendants as named, *supra.* Norman individually was not mentioned in the summons and was not a party to the action. Copies of summons and complaint seem to have been served on August 20, 1952, on Rose and son Rey personally. On September 24, 1952, the court at the request of the Bank made an order of service of summons by publication on "defendant Norman N. Carr" (without mentioning his capacity as trustee), copies of the required papers to be directed to him at a certain address in Miami Beach, Florida. Copies of the above summons, order for publication of summons and complaint were on September 25, 1952, mailed to "Mr. Norman N. Carr" at said address. A publication of summons took place in the Recorder from September 25th to November 13th, 1952. The text contained the correct title with the names of the four actual defendants among whom Norman as trustee but the order to appear and defend is directed to "Norman N. Carr defendant" only.

On May 18, 1953, Rose filed an answer and cross-complaint. The answer mainly denied that Norman as trustee and the two sons claimed ownership of the accounts and the cross-complaint asserted Rose's right to the accounts because they were awarded to her in an interlocutory decree of divorce of April 7, 1947, which award was confirmed in the final decree and because Norman as trustee had in July, 1947, brought an action to quiet title in the accounts which was dismissed by the court in June, 1951. At the request of Rose an order for service of the cross-complaint on Norman and son Sherman by publication of summons was issued on

June 2, 1953, but it does not appear that any service of said cross-complaint was made accordingly.

On June 10, 1953, the court at the request of the Bank made an order for service by publication of summons on the complaint on son Sherman, copies of papers to be directed to him at the same Miami Beach address as was ordered for Norman. The mailing took place on June 15, 1953, and publication of summons correctly directed to all four actual defendants was published in the Recorder from June 11th to July 30th, 1953.

On January 5, 1954, the court made an order for interpleader, directing the Bank to pay the balances to the clerk of the court and the defendants to litigate their claims between themselves; Rose's cross-complaint was dismissed with prejudice. The order recites the appearance of the Bank and Rose and that son Rey, being duly served and son Sherman and Norman as trustee, being duly served with summons by publication had failed to appear within the time required by law. (It does not appear that their default was entered.)

On January 7, 1954, a judgment and order of distribution of funds was filed which awarded the accounts to Rose. On January 12, 1954, Norman individually and not as trustee filed notice of special appearance and motion to quash summons on complaint and service thereof. An order of February 24, 1954, denied said motion, again ordered the Bank to pay the balances of the accounts to the clerk and ordered the clerk to retain said sums until the time for appeal had elapsed without appeal or the appeal had been decided.

Appeal was filed on March 5, 1954, by Norman as trustee and individually, and by son Rey by Edward Levin his guardian *ad litem* each appearing specially to contest the jurisdiction of the court and by son Sherman. The appeal of each included all judgments and orders in the action.

On March 11, 1954, the court by mistake made an ex parte order directing payment by the clerk to Rose and the same day the funds were paid out to her. On June 9, 1954, the court set aside the ex parte order and ordered Rose to return the funds to the clerk. On November 12, 1954, appellants filed in this court notice of motion for stay of proceedings until after the money paid out to Rose would have been restored by her, which motion was denied.

Appellants took the position that there has been no sufficient service of summons on the complaint to give the court

jurisdiction to render judgment against Norman as trustee, as he was served individually only, and against son Rey because he was under 14 and no copy of summons was delivered to a parent or guardian, and no service of summons at all on the cross-complaint so that there was no jurisdiction to render the judgment and order for distribution of funds which was based on the allegations of the cross-complaint. It is moreover urged that said judgment and order for distribution of funds is void because the cross-complaint had previously been dismissed with prejudice and that the allegations of the cross-complaint were insufficient to allege ownership of Rose as against the sons and Norman as trustee, because it alleged nothing more than a judgment in an action to which they were no parties and the dismissal of a quiet title action of which it is not shown that it was res judicata on the merits. Finally it is said that the minor sons can disaffirm the judgments during their infancy because they were not legally represented by any guardian or guardian *ad litem* and that they disaffirm in the brief.

Respondent Rose in her brief takes the position that the sons as beneficiaries were not necessary parties as the trustee could defend for them and that because they were represented by him they cannot disaffirm; that it was not necessary expressly to describe Norman "as trustee" or that at any rate the failing to do so was not prejudicially erroneous, and that the cross-complaint in substance contained matter of defense only and that therefore service of summons was unnecessary and its dismissal did not affect the result.

Moreover Rose filed a motion for leave to produce additional evidence and an affidavit supporting it, in which it is stated that subsequent to the judgments and orders appealed from, to wit in September, 1955, appellants initiated contempt proceedings against Rose because of her disobeying the order of June 9, 1954, for return of the funds paid to her by mistake and that in the affidavits of her attorney there was also a prayer for all other proper relief and that their attorney took part in the hearing of the contempt proceedings. It is urged that the affidavits of the attorney of appellants, copies of which are appended to the motion, and a transcript of the oral proceedings should be received in evidence, because they show acts which cause a general appearance of the appellants, which would cause the question of the service on them to become moot and should lead to dismissal of the appeal. It is moreover contended that the notice of appeal also constitutes a

general appearance because it includes all orders, also those going to the merits of the case. Respondent cites *Olcese* v. *Justice's Court*, 156 Cal. 82, 87-88 [103 P. 317] in which it is said that if a defendant who has appeared specially to plead lack of jurisdiction of the person only "raises any other question, or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general, though termed special, and he thereby submits to the jurisdiction of the court as completely as if he had been regularly served with summons."

Although such a general appearance would at most cure the defects in service and would not cause the other points raised by appellants to become moot, we shall first review respondent's above contentions. It has been repeatedly held in this state that also "a general appearance made after entry of judgment has the effect of curing any defect arising from the lack of jurisdiction due to the failure to serve or notify a person of the proceedings." (*Farmers etc. Nat. Bank* v. *Superior Court*, 25 Cal.2d 842, 846 [155 P.2d 823]; *Thompson* v. *Alford*, 135 Cal. 52, 54 [66 P. 983]; *Security Loan & T. Co.* v. *Boston & S. R. Fruit Co.*, 126 Cal. 418, 421 et seq. [58 P. 941, 59 P. 296]; *Tolle* v. *Doak*, 12 Cal.App.2d 195, 199 [55 P.2d 542]; *Shelley* v. *Casa De Oro, Ltd.*, 133 Cal.App. 720, 723 [24 P.2d 900].) However, in all the cases found the acts considered to constitute a general appearance were performed in the trial court and in the proceedings themselves as to which the defendant claimed lack of jurisdiction over his person because of insufficiency of notification. ■ Contempt proceedings are separate and distinct and no part of the original case out of which they arise. ■ They may be instituted by a party beneficially interested, although he was not a party to the original proceedings. (*McFarland* v. *Superior Court*, 194 Cal. 407, 423 [228 P. 1033]; 12 Cal. Jur.2d 75, 78.) This is so, although the practice is to prosecute a matter of contempt by affidavit in the cause out of which it arose and not as a separate proceeding with a title of its own. (*Ex parte Ah Men*, 77 Cal. 198, 200 [19 P. 380, 11 Am.St.Rep. 263].) ■ There is only then a deviation from the special appearance for the purpose of objecting to the jurisdiction over the person so as to constitute a general appearance, when the objecting party takes any other step which is part of the regular proceeding in the case or when he asks any relief which could be granted upon the hypothesis only that the court had jurisdiction of his person. (*Judson* v.

734

*Superior Court*, 21 Cal.2d 11, 13 [129 P.2d 361].) Neither of the two is the case with respect to the affidavits instituting contempt proceedings. The contempt proceeding is no part of the regular proceeding and relief in contempt can be asked by a person interested, who had not been a party to the original proceeding; the appellants had such beneficial interest because of their claim made to the Bank and because of their appeal, also independent from any appearance in the superior court action. If their affidavits are considered in their entirety it is clear that the further relief asked for relates to further measures in the contempt proceeding over and above the issuance of the order to show cause specifically mentioned.

■ Such appearance in the contempt proceedings only does not under the above authorities constitute a general appearance which cures defects in service. (*Cf.* also 6 C.J.S. 41.) The motion to augment the record with matter relating to the contempt proceedings will be denied.

■ The notice of appeal, including all orders made, also those going to the merits of the case, need not constitute a general appearance by Norman and son Rey who expressly stated that they were ''appearing specially for the purpose of contesting the jurisdiction of the Court in the premises.'' The insufficiency of the service of summons would vitiate all decisions on the merits and so long as the invalidity is urged solely on the ground of the insufficient service of summons and ensuing lack of jurisdiction of the person of said defendants such appeal will not constitute a general appearance and will not cure the defects in service. (*Clark* v. *Forbes*, 34 Cal.App. 524, 525 [168 P. 155].) However, said appellants have raised on appeal other questions than the one of jurisdiction over their persons. An evident example is the question of the sufficiency of the allegations of Rose's cross-complaint. Others are whether the striking of the cross-complaint prevented the entering of the judgment of distribution and whether the sons are entitled to disaffirm the judgment. The question is therefore presented whether the raising for the first time on appeal of matters not relating to the jurisdiction of the person has the effect of curing the defects in service in the same way as if such matters were raised after judgment in the trial court. The language which we quoted, *supra*, from the Farmers etc. Nat. Bank case is wide enough to include cure of defect by general appearance on appeal. However, neither said case nor any of the other cases cited in that respect relate on their facts to general

appearances for the first time on appeal and the authorities in the states outside California are to the contrary. Only when the appeal is to an intermediate court which tries the case de novo or is taken from a decision of a justice's court is the appeal which involves matters of substance considered to cure the jurisdictional defect; if the appeal is to a court which reviews the law only the appeal involving matters of substance is considered a general appearance which gives jurisdiction of the person for the future only and does not cure the defects in service *nunc pro tunc*. If the service is found insufficient the appellate court will reverse but on remand the lower court will have jurisdiction over the person of appellant without further process. (3 Am.Jur. 796 et seq., Appearances, §§ 24, 25, 26; 6 C.J.S. 41-42, Appearances, § 12n.) It must be noted that with respect to motions to vacate judgment in the trial court both the cited encyclopedias state that the weight of authority is in accord with the California cases which hold that raising of nonjurisdictional matters cures defects of service.

As to raising of such matter in the reviewing court there is no clear authority in California. Some cases seem to show a tendency to the opinion that it also cures the defect retroactively. In *Chaplin* v. *Superior Court*, 81 Cal.App. 367, 379-380 [253 P. 954] it was held that in cases of lack of personal jurisdiction because of insufficient notification prohibition would lie and appeal could be considered an inadequate remedy, because, if by appealing a general appearance of the defendant would result, the appeal would be useless and appellant would be denied effective relief from orders made without jurisdiction. In *Clark* v. *Forbes, supra,* 34 Cal.App. 524, 525 it is said that certain cases [relating to the raising of nonjurisdictional matter in the trial court] "hold that an appeal involving the merits of an action carries with it a submission of the appellant personally to the jurisdiction of the court," but that such does not apply to an appeal restricted to the jurisdiction over the person of appellant. See also *Childs* v. *Lanterman*, 103 Cal. 387, 392 [37 P. 382, 42 Am.St. Rep. 121]. These cases are not sufficiently strong authority for the rule of retrospective cure by a general appeal to overcome the nearly unanimous contrary rule in other jurisdictions.

Moreover a rational basis can to some extent be found for the different effect of raising of nonjurisdictional matter by motion to vacate and by appeal. The following reasons are

given in *Olcese* v. *Justice's Court, supra,* 156 Cal. 82, 87 for the general rule that a defendant who wishes to rely on lack of jurisdiction over his person must appear specially for that purpose and must abstain from raising any other matter: "Pleas based upon lack of jurisdiction of the person are in their nature pleas in abatement and find no especial favor in the law. They amount to no more than the declaration of the defendant that he has had actual notice, is actually in court in a proper action, but, for informality in the service of process, is not legally before the court. It is purely a dilatory plea, and when a defendant seeks to avail himself of it, he must, for very obvious reasons, stand upon his naked legal right and seek nothing further from the court than the enforcement of that right . . . Another reason equally valid, is that if such defendant shall ask for any relief other than that addressed to his plea, he is seeking to gain an unconscionable advantage over his adversary, whereby, if the determination of the court be in his favor he may avail himself of it, while, if it be against him, he may fall back upon his plea of lack of jurisdiction of the person." The first reason based on disfavor of such attitude might also lead to the same effect on appeal but the second ground does not apply to an appeal in which the decisions on both matters are final. More important is possibly that if the defendant is restricted in the lower court to the presentation of his defense as to the jurisdiction of the person only and is unsuccessful he still has the opportunity to raise his substantive defenses by appeal from the judgment, whereas failure to raise them in the court of last resort would be definitively fatal, so that the presentation of the jurisdictional matter on appeal would be more hindered by the restriction than the presentation in the trial court.

We therefore follow the majority rule and hold that the raising of nonjurisdictional matter on appeal has not cured possible defects of service retroactively so that appellants' contentions in that respect must be reviewed.

We have concluded that mainly they must be sustained. As to the service on Norman we must note the general rule that "If the complaint and summons designate the defendant in a representative capacity, he should be so served." (1 Witkin, California Procedure, 813.) In *Morrissey* v. *Gray,* 160 Cal. 390, 394 [117 P. 438] it is said that a return of service on Johanna Morrissey afforded no evidence of a service upon Johanna Morrissey as administratrix. Even if we may consider the affidavit for order for

publication of summons and the order for publication of summons on "defendant Norman N. Carr" as relating to said Norman N. Carr in the capacity in which he is mentioned as a defendant in the case, and if we could accept the same for the summons as published in the Recorder in the fall of 1952, the fact that the envelope containing the required copies was addressed to Mr. Norman N. Carr, without mentioning the capacity in which he was sued is fatal to the service. ■ "When jurisdiction is sought to be obtained by a prescribed form of constructive service the statutory conditions on which the service depends must be strictly observed. Unless the statute has been complied with, there is no power to render a judgment." (*Weisfeld* v. *Superior Court*, 110 Cal. App.2d 148, 151 [242 P.2d 29].) Section 413 of the Code of Civil Procedure requires the copies to be "deposited in the post office, directed to the person to be served, . . ." In *Parsons* v. *Weis*, 144 Cal. 410, 415 [77 P. 1007], it is said, "Unless it appear that it was so directed, the record will fail to show a compliance with the order and the proof of service will be incomplete." ■ In our case the person to be served was Norman in his capacity of trustee and the copies were not directed to him as such. Although the objection is very formal we are constrained to hold that there has been no compliance with the statutory requirements of constructive service and that the court did not obtain jurisdiction over the person of Norman as defendant.

As to son Rey it is undisputed that at the time of the service on him he was a minor under the age of 14 years, residing within this state. ■ Section 411, subdivision 3, of the Code of Civil Procedure then requires delivery of copy of summons to the minor personally and also to his father, mother or guardian, if one is within the state. This double personal service is jurisdictional (*Akley* v. *Bassett*, 189 Cal. 625, 639 [209 P. 576]; 1 Witkin, *supra*, p. 813). No service on the mother, who was within the state, appears and there is no contention that she was served as such. That Rose was served as defendant is not sufficient. ■ "A statute requiring process against an infant to be served on his father, mother, or guardian is not complied with by service on a parent in his capacity as defendant only; where the parent is also a party defendant, he must be specially served for the infant in order to bring the latter before the court." (27 Am.Jur. 858.) Also as to son Rey we must conclude

that there was no service as required by the statute and that the court did not obtain jurisdiction over his person.

No attack is made upon the service of summons on son Sherman, but the grievances developed with respect to Rose's cross-complaint and the order of distribution relate to him also. It is clear that service of Rose's pleading on the appellants-defendants including son Sherman was required. In *S. F. Savings Union* v. *Long*, 123 Cal. 107, 109 [55 P. 708] it is said that in interpleader actions "there may always be a twofold contest: First, as to the right of the plaintiff to bring the suit and to force the defendants to interplead; and, if such right is maintained, the litigation among the defendants. There may be two sets of pleadings: first, those having reference only to the right of the plaintiff to compel the defendants to interplead, and the several complaints of the defendants in which their respective rights to the subject in controversy are set up. These may be, and usually are, included in the answer to the bill of interpleader. Such answer is then in the nature of a cross-complaint, and should be served upon each defendant, who may answer the same." (See also 2 Witkin, California Procedure, 1110-1111.) The fact that Rose separated her opposition to the Bank's right to have interpleader proceedings and her claim to the accounts only accentuates the necessity of service. A cross-complaint asking affirmative relief must be served on the parties affected thereby, and if one has not appeared in the action summons must be issued and served as upon the commencement of the original action (Code Civ. Proc., § 442; *Fox Woodsum Lbr. Co.* v. *Janes*, 76 Cal.App.2d 748, 751 [173 P.2d 854]). As no service of summons on the answer and/or cross-complaint of Rose was had on the appellants, who had not appeared in the action, the court had no jurisdiction of them for the purpose of deciding the respective rights of the parties to the accounts in controversy, not even of son Sherman, who had been correctly served with summons on the original complaint. The original complaint in interpleader does not raise the issue of the validity of the claims of the several claimants, but only of the right of the plaintiff to compel the defendants to interplead. (*Cf.* 2 Witkin, *supra*, 1109.)

On the above grounds the order for interpleader and the judgment and order of distribution of funds both dated January 5, 1954, and the order of February 24, 1954, denying motion to quash and directing payment into court will be reversed and the case will be remanded. The orders for

publication of summons of which also appeal is taken are not appealable and the appeal taken therefrom will be dismissed. No grievances have been developed with respect to said orders on the appeal of the final judgments.

On the remand the trial court will without further service of process have personal jurisdiction of Norman in his capacities as trustee for his sons, under the rule previously stated, because of his general appearance in said capacities in this court. The court will also have jurisdiction of the person of son Sherman, who was legally served with summons and appeared generally by his guardian *ad litem*. However, no jurisdiction of the person of son Rey will have been obtained.

The appearance of a guardian *ad litem* for a minor defendant not regularly served with process, is void and does not constitute waiver of the defect in service. (*Redmond* v. *Peterson*, 102 Cal. 595, 599 [36 P. 923, 41 Am.St.Rep. 204] ; *Akley* v. *Bassett, supra,* 189 Cal. 625, 639 ; *Weisfeld* v. *Superior Court, supra,* 110 Cal.App.2d 148, 152.)

In the remanded action the claims of the several parties will have to be pleaded by them and if issue is taken duly proved. The finding of the court in the divorce action that the accounts in dispute were community property of the parties and the award of them to Rose has no force or effect as to the sons or their trustee as such, who were not parties to the divorce action. Other points raised on appeal do not require decision. The contention of the Bank that it is protected by the payment of the funds into court, will only require decision if and when on remand it would be found that Rose is not entitled to the funds.

The motion for leave to produce additional evidence is denied; the order for interpleader, the judgment and order of distribution of funds and the order denying motion to quash and directing payment into court are reversed; the appeal from the orders for publication of summons is dismissed; the cause is remanded for further proceedings.

Dooling, J., and Kaufman, J., concurred.