[Civ. No. 23133. Second Dist., Div. One. Dec. 28, 1959.]

HELEN M. CONVERSE, Appellant, v. C. E. JOSLIN et al., Respondents.

John F. Poole and Elon G. Galusha for Appellant.

Chas. T. Rippy and Harold W. Svenson for Respondents.

BISHOP, J. pro tem.*—We are confronted in this one case, with six—in reality thirteen—appeals, each one taken by the plaintiff. The first notice of appeal was filed October 23, 1956; the latest, December 4, 1957. (Appellant's closing brief was filed July 29, 1959.) We find no one of the appeals to have merit, nor to present problems that justify, in themselves, the space in law libraries that this opinion will take. But, that we may give other than lip service to the provision of article VI, section 24, of our Constitution, directing that we always state in writing the grounds of our decisions, we shall deal with each appeal at greater length than we otherwise would.

In order the more readily to make understandable the problems to be considered, we pause to give the underlying plot of plaintiff's case. There are three principal characters: Melville E. Joslin, the president of the Joslin Lumber Company, and owner of one share in that corporation; his mother-in-law, Alameda A. Converse, owner of 518 shares, and first vice-president; and Ploma Joslin, daughter of Alameda and wife of Melville, who was committed to Camarillo State Hospital in 1940. Apparently, we need not *know*, no shares were issued to her, but, plaintiff claims, she nonetheless owned a large part of the assets of the corporation.

In 1938 Melville "attempted" to dissolve the corporation, but never turned any of its assets over to Alameda or Ploma. Instead, they were used, and the profits invested and re-invested in a number of allied enterprises, until the total, now sought to be declared to be held in trust for plaintiff and Ploma, amounts to $1,824,507, according to what plaintiff asserts is her conservative estimate.

This suit, commenced March 30, 1953, progressed through various maneuvers until three judgments of dismissal were entered after as many demurrers were sustained without leave to amend. The appeals before us are from these three judgments and from three orders, one of which covers eight separate motions.

### Appeal from Order of August 24, 1956

This order must be sustained on two grounds: (1) the motion it denied was made too late; (2) the trial court was

---

*Assigned by Chairman of Judicial Council.

quite justified in not accepting as a fact the ground relied upon in its support.

On March 12, 1954, two requests for entries of dismissal were filed by John J. McMahon, attorney for plaintiff, and the notation appears on each: "Dismissal entered this 15 day of March, 1954." The first of these requests asked that the action be dismissed with prejudice as to defendants Helen McLemore (also known as Helen Joslin), Lucile Bransford (sued herein as Lucile Bran*k*ford) and Ruth Joslin Durbin. The second requested the clerk to enter a dismissal "as to Item No. 10, page 14, lines 27 to 32, inclusive, of the complaint on file herein covering 'A Duplex residence located at 1500-120th Street, Torrance, California' etc.,".

▮ A motion to set aside an order made in open court to dismiss the action as to a defendant is authorized by the fourth paragraph of section 473, Code of Civil Procedure (*Harth* v. *Ten Eyck* (1941), 16 Cal.2d 829, 833 [108 P.2d 675, 677]) and so is a motion to set aside a dismissal filed with the clerk. (*Robinson* v. *Hiles* (1953), 119 Cal.App.2d 666, 672-673 [260 P.2d 194, 197].) Relief under section 473, however, by its own terms may not be sought after the expiration of six months, and plaintiff did not file notice of her motion for relief from these dismissals until June 14, 1956, more than two years after the dismissals were entered.

▮ The ground upon which the plaintiff sought to have the dismissals undone was that they had been entered by her former attorney without her knowledge or consent. The trial court was warranted by the circumstances in not believing her statement that the dismissal was without her knowledge or consent, for her first amended complaint, filed about two years after the dismissals and a month before her motion to set them aside, contained terms in harmony with the knowledge that the three defendants were no longer parties; that she had no complaint against them; and that the property described in the second dismissal was not involved in the action. The names of Lucile Bran*k*ford and Ruth Joslin Durbin appeared among the host of other defendants in the title of the original complaint, and in its text they were said, "according to the record in the Probate Estate of Melville E. Joslin," to be two of his heirs. In the first amended complaint, which the plaintiff filed in propria persona, the name of neither defendant appears. The trial court could well believe that the disappearance of these two defendants from the

case was not inadvertent but with her knowledge and consent.

The third of the dismissed defendants was Helen McLemore, alias Helen Joslin. She was mentioned several times in the original complaint where it was alleged: ''That according to the record in the Probate Estate of Melville E. Joslin No. 332947 his heirs at law were purported wife Helen Joslin. . . .'' In the list of 16 items declared to be the subject matter of the suit, we find: ''Item No. 10 A Duplex residence located at 1500-120th Street, Torrance, California claimed to be owned by Helen McLemore now collecting the rent on the same under the name of Helen Joslin.'' Some other properties are listed, ''claimed to be owned by'' or ''operated by'' ''Melville E. Joslin and/or Helen McLemore.'' But in the first amended complaint, over the signature of ''Helen Converse, Plaintiff in Pro Per,'' in only two instances is Helen McLemore (Joslin) named (1) Among a list of the concealed assets of the Joslin Lumber Company's interest is this one ''d) Joslin Lumber Co. 1782 West Carson, Torrance, California, M. E. Joslin, Helen Joslin, filed August 13, 1944;'' (2) In the concluding paragraph of the pleading we read: ''That the following persons are sued herein as fictitious persons and corporations, to-wit: John Doe McLemore, husband of Helen McLemore. . . .'' Neither among the ''concealed assets'' nor elsewhere is there any mention made of the duplex building at 1500-120th Street, as to which a ''dismissal'' had been entered, allegedly without the knowledge or consent of the plaintiff. Again, the trial court may very well have been skeptical of plaintiff's contention that she neither knew nor consented to the dismissals made long before she filed her amended complaint, which was in harmony with the dismissals.

The order denying her belated motion to set them aside must be affirmed.

### Appeals from Judgments of Dismissals

Three demurrers to the second amended complaint were filed: One by defendants Joslin Lumber Company, a California corporation and C. E. Joslin, sued individually and as one of the partners of the Southwest Lumber Company; another by defendant Eva M. Alexander, doing business under the fictitious firm name and style of Joslin-Alexander Company; and the third by defendant George Cole, individually and as one of the surviving stockholders and trustees for Joslin Lumber Company, a corporation, and defendant Elvin Phil-

lips, individually. Each of these demurrers raises the question of plaintiff's legal capacity to sue on behalf of Ploma C. Joslin and that of the sufficiency of the second amended complaint to state a cause of action. Each was sustained without leave to amend; judgments of dismissal followed, and were appealed from.

Plaintiff opens her pleading with the words: "*Comes Now Helen M. Converse,* Plaintiff in her own right and in behalf of Ploma C. Joslin, her cousin, now confined in the Camarillo State Hospital, Camarillo, California, as an alleged incompetent, of whose body she is the duly appointed Guardian . . ." Later it is alleged that Ploma was committed to Camarillo State Hospital in April of 1940, and on November 18, 1946, the plaintiff was appointed as guardian of her estate and person. However, in March of 1953, by court order her powers were suspended "and an attempt was made to remove the plaintiff as the Guardian of this Estate and person." She adds that she is informed and believes "that she is still the legal guardian—because an appeal was taken from all of the orders of the court removing her as guardian———." That which she does not allege, in her third attempt to plead her case, was that the appeal was dismissed. This, however, was alleged in her verified first amended complaint, and she can not avoid the effect of that fact by her failure to speak of it in her subsequent complaint. "Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation. [Citing cases.]" (*Lamoreaux* v. *San Diego & Arizona Eastern Railway Co.* (1957), 48 Cal.2d 617, 623 [311 P.2d 1, 4]. See also *Campbell* v. *Campbell* (1958), 157 Cal.App.2d 548, 554 [321 P.2d 133, 136-137], and *Tudor* v. *City of Rialto* (1958), 164 Cal.App.2d 807, 812 [331 P.2d 122, 126], citing cases.)

 Plainly plaintiff appears to have no legal capacity to sue on behalf of Ploma. She (plaintiff) is no longer guardian of her estate. If guardian of her "body," by which is doubtless meant "person," that relationship results in no right to sue on her behalf. Is she her cousin? That would add nothing to her legal stature. She appears to be Ploma's sister-in-law, but that creates no capacity to prosecute an action. As to any cause of action attempted to be stated as to Ploma, the demurrers were properly sustained, and that they were sustained without leave to amend does not appear to be an abuse of discretion.

In testing the sufficiency of the second amended complaint we need not consider, then, whether or not it states a cause of action in Ploma's favor, but limit our attention to its allegations in plaintiff's favor. The first question we need to have answered is what is her connection with the scattered assets which she claims are held in trust for her? Paragraphs XXXIX and XL of the second amended complaint give us these answers:

## "XXXIX

"The plaintiff believes and so alleges that she became the heir of the fifty-six per cent (56%) of the Joslin Lumber Company from the distribution of her husband's estate by his leaving all he had, both in personal and real property to her, and he became the heir of the interest of his mother's fifty-six per cent (56%) in the Joslin Lumber Company by the distribution of his mother's estate—and by the joint tenancy existing between A. A. Converse and Byron J. Converse, mother and son, respectively.

## "XL

"The plaintiff is informed and believes and so alleges that the trust that was set up by the court for Ploma C. Joslin from her mother's estate, A. A. Converse, is to be held by the plaintiff and not by strangers, as it is being held today. Because this trust is to revert back to its rightful heirs B. J. Converse and his heir Helen M. Converse, in case Ploma is not released from the State Hospital, or if she dies while she is still in the hospital."

Interpreted most liberally in plaintiff's favor, these allegations come to this: plaintiff as the heir of her husband, who was the heir of his mother, Alameda, is entitled to some share of the assets, and their increase, that should have been distributed to her (Alameda) from the Joslin Lumber Company. Two gaps, at least, in the allegations of the second amended complaint, break the connection between the plaintiff and the assets she desires be decreed held in trust for her. The first is the failure to allege facts from which it can be determined that the Joslin Lumber Company was ever dissolved. Early in the pleading it is alleged that its president "attempted to dissolve said corporation," and there are several subsequent references to the "purported dissolution." Nowhere is it alleged that it was dissolved or that the several steps had been taken by which a corporation might be voluntarily dissolved, as then set forth in sections 399 through 404c,

Civil Code. As plaintiff's entire case depends upon the dissolution of the Joslin Lumber Company, and she neither alleges that it was dissolved, nor that the action necessary to bring about a dissolution took place, she failed to state a cause of action.

Another equally serious defect appears in the second amended complaint. The attempted dissolution occurred in 1938; it was in February of that year, according to the original complaint. This action was not commenced until March of 1953. During this period the following casualties took place: Melville E. Joslin died August 8, 1952; Ploma, his wife, was committed to Camarillo State Hospital in April of 1940, and was still there when the second amended complaint was filed; Alameda A. Converse died in August of 1945; Byron J. Converse, Ploma's brother and plaintiff's husband, died in August of the following year. All these facts appear in the second amended complaint. That which appears is an unexcused delay of about 15 years from the wrong complained of until the action was commenced, during which period the mouths of those that could tell of the understanding reached, the reasons for action taken, the explanation for inaction, became permanently closed. This amounted to laches appearing from the pleading itself. ▮ ". . . it is a well-settled rule of law that the defense of laches can be raised by a general demurrer. [Citing cases.]." (*Zakaessian* v. *Zakaessian* (1945), 70 Cal.App.2d 721, 725 [161 P.2d 677, 680].)

▮ Following soon after the words quoted, appear these, taken from *Maguire* v. *Hibernia S. & L. Soc.* (1944), 23 Cal. 2d 719, 736 [146 P.2d 673, 681, 151 A.L.R. 1062]: "Where, for example, an action is commenced many years *after its accrual,* the death of witnesses or destruction of evidence, presumed as well as actual, may prejudice the defendant and justify denial of relief because of staleness of the claim."

▮ Not only was the demurrer of the defendants Joslin Lumber Company and C. E. Joslin and that of George Cole and Elvin Phillips properly sustained for the two reasons given, but the third demurrer, that of Eva M. Alexander, was good for an added reason: nowhere in the second amended complaint does her name appear, except among the many defendants named in the title. In three places the name of Charles J. Alexander appears, but he is nowhere alleged or otherwise made to appear to have had anything to do with Eva M. Alexander or she with him.

There was filed, in this court, a brief of the executor under the last will and testament of Eva M. Alexander, as a friend of the court, in which the position is taken that we have no jurisdiction of the appeal from the judgment dismissing this action as to Eva M. Alexander, because, between the ruling on her demurrer and the entry of the judgment of dismissal, she died. No authority is cited for the proposition that these facts (unverified) deprived this court of jurisdiction. Section 385, Code of Civil Procedure, declares: "An action or proceeding does not abate by the death . . . of a party . . ., if the cause of action survive or continue. . . ." Rule 48 of the Rules on Appeal (for the Supreme and District Courts of Appeal) provides: "Whenever a substitution of parties to a pending appeal is necessary, it shall be made by proper proceedings instituted for that purpose in the superior court. On suggestion thereof and the presentation of a certified copy of the order of substitution made by the superior court, a like order of substitution shall be made in the reviewing court." In the premises, and in view of our conclusion that the action was properly dismissed as to Eva M. Alexander, we are not persuaded that we should dismiss the appeal as to her, or fail to affirm the judgment.

### *Appeal from Orders of September 17, 1957*

The summons, in this case, commenced March 30, 1953, was returned March 29, 1956, with proof of service, made by affidavit of one *Joe A. Centeno, on March 21, 1956*, upon Jack Brooks, individually and "Jack Brooks and William L. Johnston dba Joslin Lumber Co.," and upon "C. E. Joslin, individually, and C. E. Joslin co-partner with Oscar V. Plies, dba under fictitious name of Southwest Lumber Co., and C. E. Joslin, as Executor of the Estate of Melville A. Joslin, deceased." On March 29, 1956, C. E. Joslin, individually, and as one of the partners of Southwest Lumber Company, filed a demurrer to the complaint. Neither then nor at any other time did C. E. Joslin *as executor* make an appearance, nor did either Jack Brooks or William L. Johnston, either demur to or answer any one of the three complaints.

As we have already seen, the demurrers of C. E. Joslin, individually, and as one of the Southwest Lumber Company partners, and of Eva M. Alexander, were sustained without leave to amend, and judgments of dismissals as to these defendants followed. C. E. Joslin, *as executor,* was not a party to either demurrer nor was he mentioned in this capacity in

either judgment of dismissal, yet plaintiff, in her notice of appeal from the judgment dismissing the action as to Eva M. Alexander, refers to an order sustaining a demurrer without leave to amend in favor not only of Eva M. Alexander but also of "C. E. Joslin, executor, of the Estate of Melville E. Joslin, deceased, respondents in this appeal." Again, in her appeal from the judgment by which the action was dismissed as to C. E. Joslin individually and as a partner in the Southwest Lumber Company, plaintiff refers to an order sustaining a demurrer of C. E. Joslin individually "and as executor of the Estate of Melville E. Joslin."

Prompted by these erroneous references to C. E. Joslin *as* executor, C. E. Joslin gave notice that he was going to make two motions: one to strike the following: (1) the affidavit of alleged service on C. E. Joslin as executor; (2) the notice of appeal by plaintiff against C. E. Joslin as executor; (3) the notice of request of plaintiff for preparation of record for use on appeal against C. E. Joslin as executor; and a second motion to dismiss said action against C. E. Joslin, as executor. These motions were based upon the record and upon affidavits filed by C. E. Joslin and one O. V. Plies, in which facts were related that, if accepted, required the conclusion that summons had never been served upon Joslin in his representative capacity. These motions were granted on September 17, 1957, and the plaintiff appealed, her notice of appeal reciting that she appealed from that part of the order sustaining a motion to quash service of summons on C. E. Joslin as executor, which was not a part of the order, and, in addition, from the various orders that were made.

These appeals are easily disposed of. Service upon C. E. Joslin as executor was either made, as sworn to in the affidavit of Joe A. Centeno, or it was not made. Service upon the defendant, sued both individually and in his representative capacity, if not made upon him in the latter capacity was not served on him in his capacity as executor. (*Morrissey* v. *Gray* (1911), 160 Cal. 390, 394 [117 P. 438, 440]; *Bank of America* v. *Carr* (1956), 138 Cal.App.2d 727, 736 [292 P.2d 587, 593].) It follows that the trial court was required, by section 580a of the Code of Civil Procedure, to dismiss the action as to defendant C. E. Joslin as executor for one of two reasons: either (1) because a judgment had not been entered against him within three years after he was served and filed no answer; or (2) because he was not served

with summons within three years of the commencement of the action. The fact that summons was served, and return made, concerning some other defendants, does not, of course, affect his situation. (See *Peck* v. *Agnew* (1899), 126 Cal. 607, 609 [59 P. 125] ; *People* v. *Southern Pac. R. Co.* (1936), 17 Cal. App.2d 257, 264 [61 P.2d 1184, 1187].)

The order dismissing the action as to C. E. Joslin as executor is, therefore, affirmed. This renders of no consequence the other orders covered by the notice of appeal; if reversed it would avail plaintiff nothing. The appeal as to them, therefore, may be dismissed as moot. Moreover, none of them is an appealable order, and should be dismissed for that reason.

Among the orders made September 17 were several affecting defendants Jack Brooks and William L. Johnston. They too had been served with summons on March 21, if Centeno's affidavit spoke the truth. They too moved to strike: (1) Centeno's affidavit; and (2) the notice of appeal by plaintiff against them; (3) and the request of plaintiff for the preparation of record on appeal; and, in addition moved for the dismissal of the action. Expressly interpreting their motion to strike the affidavit as a motion to quash service of summons, the trial court granted it, and it granted the other motions, including the dismissal of the action as to them.

Here again we find the action properly dismissed. If these two defendants were served March 21, 1953, they had no judgment entered against them by September, 1957, although they had filed no answer. Even plaintiff, in her notices of appeal from the judgments dismissing the actions as to other defendants, did not recite that these defendants had demurred or otherwise appeared. But if, as they claim in the affidavits in support of their motion, they were never served, then the time had come before September 17 when the action should be dismissed for that reason. As the dismissal is to stand, the appeals from the other orders, (none being appealable except the order granting the motion interpreted as one quashing service of summons) have become of no service to the plaintiff and so moot; they should be dismissed.

### Appeal from the Order of November 20, 1957

Plaintiff petitioned the trial court to vacate that part of the order of September 17 "purporting to strike the service of summons on certain of the defendants and to rehear the said part of its order." The petition was predicated upon what must have seemed to the trial court to be false premises;

that is, that the defendants involved had been served and appeared by filing demurrers, and appeals were pending as to them. Neither was a fact. The order appealed from should be affirmed.

### Judgments on Appeal

The order denying plaintiff's motion to vacate the two voluntary dismissals is affirmed.

Each of the three judgments—one dismissing the action as to defendants Joslin Lumber Company, and C. E. Joslin, individually and as one of the partners of the Southwest Lumber Company, another dismissing the action as to Eva M. Alexander, doing business under the fictitious name and style of Joslin-Alexander Company, and the third dismissing the action as to George Cole, individually and as one of the surviving stockholders and trustees for Joslin Lumber Company and as to Elvin Phillips, individually,—is affirmed.

Of the orders made September 17, 1957, those dismissing the action as to defendants, C. E. Joslin as executor of the Estate of Melville E. Joslin, Jack Brooks and William L. Johnston, are affirmed. The appeals from all the other orders made September 17 are dismissed.

The order made November 20, 1957, denying plaintiff's petition to vacate and rehear a part of the order of September 17, is affirmed.

Wood, P. J., and Lillie, J., concurred.