[No. B221331. Second Dist., Div. Seven. July 14, 2010.]

In re VANESSA Q. et al., Minors.
MARTIN O., Petitioner and Respondent, v.
JOSE T., Objector and Appellant.

## COUNSEL

Ernesto Paz Rey, under appointment by the Court of Appeal, for Objector and Appellant.

Andre F. F. Toscano, under appointment by the Court of Appeal, for Petitioner and Respondent.

## OPINION

**PERLUSS, P. J.**—Jose T.'s parental rights were terminated pursuant to Family Code section 7822, subdivision (a)(3),[1] after the family law court found he had abandoned his three genetic children, Vanessa Q. (born in May 1993), Christopher Q. (born in Feb. 1995) and Rebecca Q. (born in Mar. 1997). The children had been in the exclusive care of their mother, L.O. (Mother), and her husband, Martin O., for more than eight years.

On appeal Jose T., who is currently incarcerated in Mexico, contends the judgment is void for lack of personal jurisdiction because he was not properly served with notice of the proceedings in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, article 10 (Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638) (Hague Service Convention). Because Jose T. made a general appearance through his counsel at the hearing on the petition and thus consented to the court's exercise of jurisdiction over him, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Martin O.'s Petition for Judgment Declaring the Children Free from Jose T.'s Custody and Control*

On January 14, 2008 Martin O. petitioned to free all three children from Jose T.'s custody and control on the ground of abandonment pursuant to section 7822, subdivision (a),[2] as a precondition to a stepparent adoption.

---

[1] Statutory references are to the Family Code unless otherwise indicated.

[2] Section 7822, subdivision (a), provides, "A proceeding under this part may be brought if any of the following occur: [¶] . . . [¶] (3) One parent has left the child in the care and custody

(See § 7841 ["interested person" who may petition under § 7822 includes a person who has filed or intends to file adoption petition within six months].) According to the evidence offered in support of the petition, Mother ended her relationship with Jose T. in May 1996. Soon thereafter Jose T. broke into the home in which Mother, Vanessa, Christopher and two other family members were residing, tied up the occupants of the home at gunpoint, raped Mother, and then took Mother, Vanessa and Christopher to Mexico by force and held them captive for two months. During this time Jose T. raped Mother multiple times, and she became pregnant with Rebecca. Jose T. allowed Mother to leave Mexico in July 1996 (without Vanessa and Christopher) on condition she return to the United States and withdraw all criminal charges against him. Mother returned to the United States and reported Jose T. to the Federal Bureau of Investigation (FBI). In January 2000 Vanessa and Christopher were found and returned to Mother in the United States. Mother married Martin O. in 2001. She and Martin O. have been raising the children together. The children wish to be adopted by Martin O.

In a declaration supporting Martin O.'s petition, Mother explained she had made several efforts to locate Jose T. but had been unsuccessful. She recently discovered Jose T. was incarcerated in Mexico, serving a sentence for unidentified crimes. However, as a result of his incarceration, she and Martin O. had been unable to serve him with notice of the petition.

### 2. Pretrial Proceedings and Continuances

At an initial pretrial status conference on February 26, 2008, the court appointed counsel for the children and for Jose T. and continued the matter to June 11, 2008.[3] At the June 11, 2008 status conference the court inquired whether Jose T. had been served with the petition. Lucia Reyes, the children's counsel, and Robert Flores, Jose T.'s counsel, explained there had been difficulty locating Jose T. in Mexico because he was known under several aliases and was likely incarcerated. Flores requested a continuance, reporting that he was currently working with the Mexican Consulate to attempt to locate Jose T. The trial court, without objection, continued the matter to September 3, 2008.

On September 3, 2008 Flores reported to the court that, after consultation with the FBI and the Mexican Consulate, he had learned Jose T. was, in fact,

---

of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child."

[3] It is not entirely clear from the record whether counsel was appointed to represent Jose T. at, or shortly after, the initial status conference. There is no question Jose T. was represented by counsel by the time of the June 11, 2008 status conference.

incarcerated in Mexico where he was awaiting sentencing on a variety of charges. The FBI was closely monitoring the case and working with Mexican authorities to determine whether the United States would pursue efforts to extradite Jose T. for the crimes he had committed against Mother and her family while in California. Pursuant to Flores's request, the court continued the matter to December 3, 2008 so that further information about Jose T.'s extradition status could be obtained.

On December 3, 2008 counsel for the children informed the court there was no evidence in the record the original petition had ever been served on Jose T. To remedy this problem, Reyes and Flores agreed an amended petition and citation to appear would be filed and served on Jose T. by mail at the maximum security prison in Mexico. Pursuant to the parties' request, the court continued the matter and set the citation hearing for April 7, 2009.[4]

On January 18, 2009 Jose T. sent a letter to the court explaining he had received the amended petition and citation to appear. (Children's counsel later reported she had mailed Jose T. a copy of the amended petition and the citation on Jan. 12, 2009, along with a cover letter explaining in both Spanish and English the documents enclosed and the contact information for Jose T.'s appointed attorney.) Jose T. explained he would not be able to appear at the hearing because he had been incarcerated in Mexico since May 1999 and wished the court to allow his attorney to meet with him in Mexico to discuss the matter in person.

At the April 7, 2009 citation hearing the children's counsel provided the court with a copy of the cover letter, petition and citation to appear that she had mailed to Jose T. in care of the Matamoros Prison in Mexico. She also provided the receipt showing she had mailed the documents via United Parcel Service of America, Inc. The court stated "it appeared at the moment" that there was proper service on Jose T. Flores did not object. Instead, he represented that, through working with both the Mexican Consulate and prison officials, he had been able to arrange his first telephone conference with Jose T., which was to take place within a few days. He asked the court to continue the matter for 30 days to enable him to speak directly with Jose T. The court granted the uncontested request and continued the matter to May 26, 2009 for a pretrial status conference.[5]

On May 26, 2009, the court continued the matter to September 22, 2009 for pretrial proceedings to resolve evidentiary issues and set a trial date for October 29, 2009.

---

[4] Although typically one would expect the petitioner, Martin O., to be the party to effect service, Martin O. was not represented by counsel in the family court.

[5] At this hearing the court also appointed counsel for mother, apparently believing, erroneously, that she was the named petitioner in this case.

### 3. *The Trial*

On October 29, 2009 Flores informed the court he had spoken with Jose T., who requested the matter not go forward in his absence. Asked when Jose T. could appear in person, Flores informed the court Jose T. still had "some time" to serve on his sentence and then would be involved in extradition proceedings. Flores acknowledged what his client really wanted was an "indefinite continuance" and reported he had explained to Jose T. the court was unlikely to grant the request. The court denied the request to postpone the trial, and Flores informed the court he was "ready to proceed" to trial on the petition. At no time during this or any prior hearing did Flores contend the court lacked personal jurisdiction over his client.

After hearing evidence from Mother and receiving into evidence a report from the Los Angeles County Department of Children and Family Services (DCFS) supporting Martin O.'s petition, the court found Jose T. had not communicated with the children for more than eight years and had not paid anything for their care, support or education; the failure to support his children or communicate with them was "willful and without lawful excuse"; and his actions constituted abandonment under section 7822. In addition, the court found an award of custody to Jose T. would be detrimental to the children. The court declared all three children free from the custody and control of Jose T. and terminated Jose T.'s parental rights as to all three children.

Jose T. filed a timely notice of appeal.

## CONTENTION

Jose T. contends the judgment terminating his parental rights is void for lack of personal jurisdiction because service by mail of the petition and the citation to appear did not comply with the requirements of the Hague Service Convention.

## DISCUSSION

### 1. *The Hague Service Convention Requirements*

■ "The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. The Convention revised parts of the Hague Conventions on Civil Procedure of 1905 and 1954. The revision was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate

proof of service abroad." (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698 [100 L.Ed.2d 722, 108 S.Ct. 2104] (*Volkswagenwerk Aktiengesellschaft*); see *In re Jennifer O.* (2010) 184 Cal.App.4th 539, 547 [108 Cal.Rptr.3d 846]; see also Hague Service Convention, art. 1.)

Article 2 of the Hague Service Convention requires each participating country to designate a "Central Authority" for receipt of or requests for service of process. (*In re Alyssa F.* (2003) 112 Cal.App.4th 846, 852 [6 Cal.Rptr.3d 1]; *In re Jorge G.* (2008) 164 Cal.App.4th 125, 134 [78 Cal.Rptr.3d 552]; see Hague Service Convention, art. 2 ["[e]ach Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6"].) Articles 3 through 6 set forth the form the service is to take and other procedures for the acceptance or rejection of service by the participating country's Central Authority. (See Hague Service Convention, arts. 3–6.)

Both the United States and Mexico are signatories to the Hague Service Convention. (*Volkswagenwerk Aktiengesellschaft, supra*, 486 U.S. at p. 698; *In re Alyssa F., supra*, 112 Cal.App.4th at p. 852; *In re Jorge G, supra*, 164 Cal.App.4th at p. 134.) Accordingly, service on a resident of Mexico of a civil complaint filed in the United States, including petitions brought under family law or juvenile dependency law, must be accomplished in accordance with the Hague Service Convention's requirements. (*In re Jennifer O., supra*, 184 Cal.App.4th at p. 547; *In re Jorge G.*, at p. 134; see also Code Civ. Proc., § 413.10, subd. (c) [Cal.'s provisions for service outside U.S. "are subject to" the provisions of Hague Service Convention].)

### 2. The Family Court Acquired Personal Jurisdiction over Jose T. When He Made a General Appearance in the Action

Mail delivery of the petition and citation to appear to the prison where Jose T. was incarcerated in Mexico, rather than service through the Mexican Central Authority, failed to comply with the service requirements of the Hague Service Convention. Accordingly, Jose T. is correct that the service of process was defective. (See *In re Jorge G., supra*, 164 Cal.App.4th at p. 134; *In re Alyssa F., supra*, 112 Cal.App.4th at pp. 853–854; see generally Campbell, *No Sirve: The Invalidity of Service of Process Abroad by Mail or Private Process Server on Parties in Mexico Under the Hague Service Convention* (2010) 19 Minn. J. Intl. L. 107, 110 [service of process abroad by U.S. litigants on parties in Mexico must proceed through Mexico's Central Authority in accordance with arts. 3–7 of the Hague Service Convention]; *OGM, Inc. v. Televisa, S.A. DE C.V.* (C.D.Cal., Apr. 15, 2009, No. CV 08-5742-JFW (JCx)) 2009 U.S.Dist. Lexis 33409 [because Mexico

has objected to all alternative methods of service under art. 10 of Hague Service Convention, service on Mexican resident in accordance with Hague Service Convention can only be accomplished through Mexican Central Authority].)

■ Defective service of the petition and citation to appear is not cured by Jose T.'s actual notice of the action. (*In re Alyssa F., supra,* 112 Cal.App.4th at p. 852; see also *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1048 [12 Cal.Rptr.2d 861].) Nonetheless, defective service is not fatal to personal jurisdiction if the defendant consents to jurisdiction over him or her by making a general appearance in the action. (See *In re Jennifer O., supra,* 184 Cal.App.4th at p. 548 [a " 'general appearance by a party is equivalent to personal service of summons on such party' "]; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145 [8 Cal.Rptr.3d 446] [" '[a] general appearance operates as a consent to jurisdiction of the person, dispensing with the requirement of service of process, and curing defects in service' "]; accord, *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 [12 Cal.Rptr.3d 711].)

A general appearance occurs when the defendant takes part in the action and "in some manner recognizes the authority of the court to proceed." (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147 [95 Cal.Rptr.2d 701, 998 P.2d 403]; see *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1037 [25 Cal.Rptr.2d 539, 863 P.2d 784] [if moving party "seeks relief on any basis other than lack of personal jurisdiction, he or she makes a general appearance"]; accord, *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 844 [84 Cal.Rptr.3d 452] [general appearance occurs when party, either directly or through counsel, participates in action in some manner that recognizes authority of the court to proceed]; *Dial 800 v. Fesbinder, supra,* 118 Cal.App.4th at p. 52 [same].)

Here, Jose T. made a general appearance in the action no later than October 29, 2009, when his counsel failed to challenge personal jurisdiction and instead, as he was expressly authorized to do by his client, requested a continuance of the trial until Jose T. could appear in person. (See *Zobel v. Zobel* (1907) 151 Cal. 98, 101–102 [90 P. 191] [request for continuance constitutes general appearance because the relief could only be asked on theory that defendant was submitting to general jurisdiction of court]; accord, *366–386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1194, fn. 2 [268 Cal.Rptr. 678]; see also *Knoff v. City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 201 [81 Cal.Rptr. 683] [attorney's request for continuance of action constituted general appearance].) Jose T.'s counsel then proceeded to argue the merits of the action.

Citing *In re Alyssa F., supra,* 112 Cal.App.4th 846 and *In re Jorge G., supra,* 164 Cal.App.4th 125, Jose T. argues, if the initial service of process

was defective, all subsequent proceedings in the case are void, whether or not he made a general appearance at trial. Jose T. misapprehends both cases. *Alyssa F.* holds only that actual notice does not cure defective service on a foreign national under the Hague Service Convention. (See *Alyssa F.*, at p. 852 [failure to properly serve party who resides outside country in accordance with requirements of Hague Service Convention "renders all subsequent proceedings void as to that person," "even when the party indisputably had notice of the action"].) It did not involve a defendant's general appearance in the trial court and certainly does not undermine the well-established principle that a general appearance constitutes consent to the court's personal jurisdiction regardless of any prior defect in notice. Quite to the contrary, the *Alyssa F.* court explained a defendant's general appearance *on appeal* did not retroactively cure defects in service in the *trial court* and render the trial court judgment valid. However, citing *Bank of America v. Carr* (1956) 138 Cal.App.2d 727, 735 [292 P.2d 587], the court explained a general appearance in the trial court would validate the trial court's actions. (See *Alyssa F.*, at pp. 851–852;[6] see also *Bank of America*, at p. 733 ["[i]t has been repeatedly held in this state" that " 'a general appearance made [in the trial court, even] after entry of judgment[,] has the effect of curing any defect arising from the lack of jurisdiction due to the failure to serve or notify a person of the proceedings' "].)

Similarly, in *In re Jorge G., supra,* 164 Cal.App.4th 125, the appellate court reversed the juvenile court's jurisdiction findings and disposition order in dependency proceedings, holding the father, a resident of Mexico, had not been properly served in accordance with the Hague Service Convention. The court began its analysis by observing DCFS, which had initiated the action, did not contend the parents had made a general appearance. Indeed, in contrast to the instant case, there were no facts suggesting the parents had ever communicated with their appointed attorney, much less authorized him to speak on their behalf at the dependency proceedings. Having assumed (properly, it would seem) no general appearance had been made in the juvenile court, the court addressed whether service of notice of the dependency court's jurisdiction and dispositional hearings complied with the Hague Service Convention. (See *In re Jorge G.*, at pp. 134–135.) As in *In re Alyssa F.*, nothing in *In re Jorge G.* stands for the specious proposition that a defendant's general appearance in the family law or dependency court is insufficient to confer personal jurisdiction notwithstanding defective service of process.

---

[6] Because the defendant first made his general appearance on appeal, the *Alyssa F.* court held the trial court lacked personal jurisdiction in the earlier family law proceedings then under review, but would have personal jurisdiction over the defendant on remand notwithstanding the continued failure to serve him properly under the Hague Service Convention. (*In re Alyssa F., supra,* 112 Cal.App.4th at pp. 851–852.)

In sum, having made a general appearance in the family law court through his counsel, Jose T. consented to the court's exercise of personal jurisdiction over him. Accordingly, his sole challenge to the judgment terminating his parental rights fails.

## DISPOSITION

The judgment is affirmed. Each party is to bear his own costs on appeal.

Zelon, J., and Jackson, J., concurred.