[No. H009933. Sixth Dist. Oct. 29, 1992.]

HONDA MOTOR CO., LTD., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
STEPHEN G. OPPERWALL, Real Party in Interest.

COUNSEL

Gary T. Walker and Alan J. Lazarus for Petitioner.

No appearance for Respondent.

Stephen J. Opperwall, in pro. per., for Real Party in Interest.

**OPINION** .

**ELIA, J.**—This is a petition for writ of mandate authorized by Code of Civil Procedure section 418.10, subdivision (c), seeking to reverse the trial court order refusing to quash service of summons on defendant and petitioner, a

Japanese corporation. The issue presented, as to which the authorities conflict, is whether a California resident may obtain valid service on a Japanese national by a private mail service. We shall hold that such a service is invalid under the Hague Convention, and therefore the motion to quash should have been granted.

The dispositive facts are not in controversy. Plaintiff Stephen G. Opperwall served defendant Honda Motor Co., Ltd. (Honda) by sending the summons, complaint and other documents to Honda's office in Japan by certified mail, return receipt requested. The papers were unaccompanied by any Japanese translation. Honda admitted receipt of the papers. Honda's acknowledgment stamp of receipt on the documents was in English. The superior court denied Honda's motion to quash this service, and this petition followed.

The issue is one of statutory construction and depends on whether article 10(a) of the Hague Convention allows service of process upon a Japanese corporation by registered mail. The Hague Convention is a multi-national treaty formed in 1965 to establish an "appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." (Hague Convention preamble, 20 U.S.T. 361, 362, T.I.A.S. No. 6638, reprinted in 28 U.S.C.A. Fed.R.Civ.P. 4, note, at 130 (West Supp. 1989) [hereafter sometimes referred to as Treaty].) The Hague Convention provides specific procedures to accomplish service of process. Authorized modes of service are service through a central authority in each country; service through diplomatic channels; and service by any method permitted by the internal law of the country where the service is made. (See Treaty, arts. 2-6, 8, 19; see also discussion in *Bankston* v. *Toyota Motor Corp.* (8th Cir. 1989) 889 F.2d 172, 173.) Each signatory nation may ratify, or object to, each of the articles of the Treaty. (Treaty, art. 21.) The Treaty, an international treaty, controls the issue. (*Dr. Ing H.C.F. Porsche A.G.* v. *Superior Court* (1981) 123 Cal.App.3d 755, 760 [177 Cal.Rptr. 155]; *United States* v. *Pink* (1942) 315 U.S. 203, 230, 234 [86 L.Ed. 796, 817-818, 820, 62 S.Ct. 552].)

In addition to the specifically authorized modes of service, the Treaty also includes article 10, the crucial provision which we must interpret here. Article 10 provides in relevant part: "Provided the State of destination does not object, the present Convention shall not interfere with—[¶] (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, [¶] (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State

of destination. [¶] (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Japan has objected to subparagraphs (b) and (c), but not to (a). ▪▪▪ It is on subparagraph (a) that plaintiff relies as permitting a mail service on a Japanese corporation.

There are two published California appellate decisions in point, which conflict. The earlier decision, *Shoei Kako Co.* v. *Superior Court* (1973) 33 Cal.App.3d 808 [109 Cal.Rptr. 402], authorizes service of process by a private litigant on a Japanese corporation by registered mail, finding such a service consistent with the Hague Convention. A contrary result was reached in *Suzuki Motor Co.* v. *Superior Court* (1988) 200 Cal.App.3d 1476 [249 Cal.Rptr. 376].

The Federal decisions also reach conflicting results, and also differ as to who has the weight of authority. (Cf. *Ackermann* v. *Levine* (2d Cir. 1986) 788 F.2d 830, with *Bankston* v. *Toyota Motor Corp., supra*, 889 F.2d 172.) However, of the decisions since 1989 (after *Suzuki, supra*, was decided), a clear majority have agreed with *Suzuki* that the mail service on a Japanese corporation violates the Treaty. (See *Bankston* v. *Toyota Motor Corp., supra*; *Gallagher* v. *Mazda Motor of America, Inc.* (E.D.Pa. 1992) 781 F.Supp. 1079; *Fleming* v. *Yamaha Corp. USA* (W.D.Va. 1991) 774 F.Supp. 992; *Wilson* v. *Honda Motor Co., Ltd.* (E.D.Tenn. 1991) 776 F.Supp. 339; *Soupart* v. *Houei Kogyo Co., Ltd.* (W.D.Pa. 1991) 770 F.Supp. 282; *Raffa* v. *Nissan Motor Co. Ltd.* (E.D.Pa. 1991) 141 F.R.D. 45; *Lyman Steel Corp.* v. *Ferrostaal Metals Corp.* (N.D.Ohio 1990) 747 F.Supp. 389; *Wasden* v. *Yamaha Motor Co., Ltd.* (M.D.Fla. 1990) 131 F.R.D. 206; and *McClenon* v. *Nissan Motor Corp. In U.S.A.* (N.D.Fla. 1989) 726 F.Supp. 822; *contra, Patty* v. *Toyota Motor Corp.* (N.D.Ga. 1991) 777 F.Supp. 956; *Meyers* v. *Asics Corp.* (C.D.Cal. 1989) 711 F.Supp. 1001.)

An important observation is that in article 10 of the Treaty, the two subparagraphs which Japan has objected to—subparagraphs (b) and (c)— both refer to "service" of judicial documents, but subparagraph (a), which Japan has accepted, refers to the freedom to "send" such documents. The cases which have invalidated a mail service on a Japanese corporation have relied heavily on this distinction. (E.g., *Suzuki, supra*; *Bankston, supra*.) They have observed that the difference in wording is significant, not only because of the time honored statutory rule of construction that use of particular language in one part of a statute but not in another is deemed to be purposeful and meaningful, but also because it is not plausible to assume that Japan would reject the relatively formal methods of service provided in

subparagraphs (b) and (c), yet would accept the less regulated and more informal method of subparagraph (a), a mail service by a private individual with no official involvement. It is more plausible to assume that Japan did not regard subparagraph (a) as authorizing any service. Rather, it is most likely that the drafters of the convention intended, and that Japan understood them to intend, that subparagraph (a) merely authorized the mailing of judicial documents other than the summons, but that "service" required more rigorous control.

This interpretation is consistent with the fact that in Japan a private mail service is not authorized, and that service of process in that country cannot be effectuated by either attorneys or lay people, but only through the official action required by the court clerk and also by the mail carrier's implied-in-law acceptance of the role of a special officer of the court when he delivers the service which has been stamped by the clerk. (See *Suzuki, supra,* 200 Cal.App.3d at p. 1481; Fujita, *Service of American Process upon Japanese Nationals by Registered Airmail and Enforceability of Resulting American Judgments in Japan* (1979) 12 Law in Japan 69, 73.) It seems highly unlikely that Japan, which does not allow its own nationals to serve process by mail, would accept such a service by foreign nationals, and it is even more unlikely that Japan, having rejected mail service by its own nationals and also mail service under subparagraphs (b) and (c) of article 10 of the Treaty, would accept an informal mail service under subparagraph (a). Plainly, the meaning of the word "send" was taken by that state to be something other than "service." This reading of the Treaty also gives meaning to the linguistic distinction made by its drafters.

The authorities which have held otherwise have observed that interpreting article 10, subparagraph (a) of the Treaty as not applying to service renders it superfluous, in that all it then provides is a " 'freedom to send judicial documents' " which presumably has always existed, the mails being open to everyone. (See *Ackermann, supra,* 788 F.2d at p. 839; *Shoei Kako, supra,* 33 Cal.App.3d at p. 821; other decisions cited in *Bankston, supra,* 889 F.2d at p. 173.) This point has some validity, although subparagraph (a) is not entirely superfluous even if it does not authorize original service, since it presumably does permit mailing of judicial documents other than process directly to litigants, a procedure which may not otherwise be available in a foreign state. But the persuasive value of the "superfluity" argument pales beside the reasons to adopt a contrary position, not only supported by canons of statutory construction, but also avoiding a glaring inconsistency with the internal procedural law of Japan. As the *Suzuki* court found, and later decisions have agreed, given that service of process by registered mail is not allowed in Japan, it is "extremely unlikely that Japan's failure to object to

article 10, subdivision (a) was intended to authorize the use of registered mail as an effective mode of service of process, particularly in light of the fact that Japan specifically objected to the much more formal modes of service by *Japanese officials* which were available in article 10, subdivisions (b) and (c)." (See *Suzuki, supra,* 200 Cal.App.3d at p. 1481; *Bankston, supra,* 889 F.2d at p. 174.)

Also of importance is that the opinion of the court in *Shoei Kako, supra,* is flawed by its misunderstanding of Japanese law. The decision noted that the record before the court did not demonstrate that service by mail with evidence of delivery was not a permissible method for service of documents in domestic Japanese actions. (*Shoei Kako, supra,* 33 Cal.App.3d at p. 822.) This mistake of Japanese law seriously undermines the persuasive value of *Shoei Kako.*

Plaintiff observes that a prominent California treatise on procedural law has stated that *Suzuki* is incorrect. (Weil & Brown, Cal. Procedure, § 4:147.1, Comment, pp. 4-31.) However, that treatise states as its reason for rejecting *Suzuki* that interpretation of the Hague Convention is a matter of federal law, and the federal courts generally uphold service by registered mail where there has been actual delivery. (*Ibid.*) For this proposition it cites *Ackermann, supra,* and *Meyers* v. *Asics Corp., supra,* admittedly cases which are contrary to *Suzuki.* However, as cited above, there are many recent Federal decisions which hold the opposite position. Accordingly the weight of precedent does not support the treatise's conclusion.

In citing cases which disagree with *Suzuki,* the treatise emphasizes that in those cases actual delivery was proved to have occurred. Plaintiff below also emphasized here that there was actual service, the documents were received, and there was also evidence that the papers were understood, even though not translated into Japanese, because the acknowledgment of receipt was in English and the documents were quickly delivered to Honda's American attorneys. However, these arguments share a common fallacy; they assume that in California, actual notice of the documents or receipt of them will cure a defective service. ■ That may be true in some jurisdictions, but California is a jurisdiction where the original service of process, which confers jurisdiction, must conform to statutory requirements or all that follows is void. (*People* v. *Greene* (1887) 74 Cal. 400, 405-406 [16 P. 197]; *Schering Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 737, 741 [125 Cal.Rptr. 337]; *In re Abrams* (1980) 108 Cal.App.3d 685, 692-694 [166 Cal.Rptr. 749], and cases there cited; see Restatement of the Law, Judgments (1942) § 8, at p. 46 et seq.) Specifically plaintiffs must comply with statutes prescribing the method of service on foreign corporations. (*Federal Machine & Welder Co.* v. *Superior Court* (1968) 259 Cal.App.2d 927, 931 [66 Cal.Rptr. 841].)

 Plaintiff argues that the Hague Convention is not controlling over California statutes which authorize service by mail. (Citing Code Civ. Proc., § 415.40.) However, this argument is entirely without support; the preemptive effect of the Hague Convention as to service on foreign nationals is beyond dispute. (See *Volkswagenwerk Aktiengesellschaft* v. *Schlunk* (1988) 486 U.S. 694, 699 [100 L.Ed.2d 722, 730-731, 108 S.Ct. 2104]; *Dr. Ing. H.C.F. Porsche AG* v. *Superior Court, supra,* 123 Cal.App.3d 755, 760.) Even the *Shoei Kako* case essentially concedes this point, by analyzing and construing the treaty rather than simply considering the matter under California law.

Plaintiff argues that it is ridiculous, wasteful and time consuming to reverse the trial court just to force plaintiff to go through the motions of a service under the convention, when there is no question but that Honda has notice of the action, its attorneys stand ready to defend it, and no practical aim can be accomplished by quashing the service. However, plaintiff cites no authority permitting a California court to authorize an action to go forward upon an invalid service of process. The fact that the person served "got the word" is irrelevant. (See *In re Morelli* (1970) 11 Cal.App.3d 819, 837 [91 Cal.Rptr. 72]; *In re Abrams, supra,* 108 Cal.App.3d at pp. 693-694.) "Mere knowledge of the action is not a substitute for service, nor does it raise any estoppel to contest the validity of service." (108 Cal.App.3d at p. 693, citations omitted.) "[O]ur adherence to the law is required if we are ever to instill respect for it." (*Id.* at p. 695.) The *Abrams* court felt it could not rewrite the work of the California Legislature; how much less are we able to rewrite a federal treaty.

 Petitioner correctly points out that the service is also flawed by the omission of a Japanese translation. Plaintiff admits that the Central Authority for Japan requires that documents served under the convention be accompanied by a Japanese translation.

Plaintiff urges us to follow the *Shoei Kako* decision rather than *Suzuki* because the *Shoei Kako* case was decided by the First District Court of Appeal and originated in Santa Clara County, now a part of the jurisdictional territory of the Sixth District Court of Appeal. Yet even while making this argument plaintiff admits there is no authority for it and that *Shoei Kako* is not technically binding on this court under the principles of stare decisis. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *McCallum* v. *McCallum* (1987) 190 Cal.App.3d 308, 315, fn. 4 [235 Cal.Rptr. 396].) Nor does the question of interpretation of a federal treaty depend on local considerations.

Since the attempted mail service on Honda was improper under the Hague Convention, the trial court should have granted the motion to quash service on defendant Honda. We will issue a writ of mandate directing this result.

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and he has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue as prayed, commanding respondent court to vacate its June 8, 1992, order denying Honda's motion to quash service of summons and complaint, and to issue an order granting that motion. Honda is the prevailing party in this matter and shall have costs.

Capaccioli, Acting, P. J., and Premo, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 14, 1993. Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.