OPINION OF THE COURT
Thomas V. Polizzi, J.
I. The Relevant Facts
*3 On or about April 22, 2002, the defendant Casa de Cambio Puebla, S.A. de C.V. (Puebla) commenced an action in the Fourth Court, First Instance, Veracruz, Mexico, against the plaintiff Casa de Cambio Delgado, Inc. (Delgado). The translated complaint alleges that, pursuant to a contract between Puebla and Delgado, Puebla transferred monies received from Delgado to certain payees in Mexico. In return, it received a commission of 1.5% of the net amount of each transmission. Delgado repeatedly attempted to change the terms of the contract but Puebla refused; however, since September 1998, Delgado paid Puebla only a 1% commission. Puebla alleged that the contract provides that it would be interpreted according to the laws of the State of New York, but did not contain a forum selection clause. In its action, Puebla seeks the balance of the commissions owed to it, alleged to be over $821,000. On or about August 13, 2002, Puebla personally served Delgado in the United States.
On or about September 24, 2002, Delgado commenced this action against Puebla, alleging that pursuant to a contract with Puebla, it electronically transmitted money to Puebla in Mexico, with instructions to pay designated recipients located there. Although as of January 1998 the parties agreed that Puebla would receive a 1.5% commission, effective September 1998, they allegedly orally agreed that Puebla would receive a 1% commission. Delgado alleges that the business relationship terminated on or about October 4, 2000, and it demanded from Puebla the balance of $112,414.68 remaining in the transmission accounts, but Puebla refused to pay. In this action, Delgado seeks damages of $850,000 based upon theories of breach of contract, breach of agency obligations, constructive trust and unjust enrichment. The damages are alleged to consist of the balance of funds from the transmission accounts, lost business and out-of-pocket expenses.
Delgado served Puebla in Mexico. The affidavit and supplemental affidavit of Jose Raul Bitar Romo (Romo) indicate that Romo is an attorney admitted to practice law in the United Mexican States, and represents Delgado in Puebla’s action in Mexico. Romo obtained an original copy of the complaint certified by the Special State Deputy Secretary of the State of New York, and caused them to be translated into Spanish. On November 5, 2002, he went to an address in the City of Puebla, Mexico, which bore a sign stating “Casa De Cambio Puebla.” Romo entered the premises and informed the receptionist that he was there to deliver legal documents.
*4 The receptionist indicated that she would call the person who handled such matters. A man named Cristobal Zarate Quechol (Quechol) appeared, and identified himself as Puebla’s assistant accountant and the person authorized to accept service of legal documents for Puebla. Romo handed Quechol the relevant documents which Quechol accepted, and Quechol executed an acknowledgment of receipt.
II. The Motion To Dismiss
In its motion to dismiss the complaint, Puebla contends that it is a Mexican corporation that does not maintain an office or agent for service of process in the United States. It asserts that to properly serve it, Delgado was required to conform to the requirements of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Convention) (20 UST 361, TIAS No. 6638 [1965]; Fed Rules Civ Pro rule 4 [f] [1]).
Puebla argues that because Mexico objected to service of process using the methods described in article 10 (a) through (c) of the Hague Convention, Delgado was not permitted to serve it using a privately retained attorney and, instead, could only serve it utilizing Mexico’s Central Authority for service of judicial and extrajudicial documents from other contracting states. Puebla also contends that the service did not conform to CPLR 311 (a) (1), as Quechol was not an employee or agent of Puebla authorized to accept service. Finally, Puebla contends that this action should be dismissed or stayed, as the same issues are the subject of a lawsuit brought by Puebla against Delgado in Mexico.
In support, Puebla annexes the affirmation of Eduardo Martinez R. (Martinez), an attorney licensed to practice law in Mexico who represents Puebla in its action against Delgado in Mexico. Martinez asserts that although Mexico’s objection to article 10 of the Hague Convention addressed only direct service of documents through diplomatic or consular agents, this did not signify that Mexico would accept service by or upon an agent. He asserts that pursuant to the Hague Convention and Mexican law, only two modes of service from abroad are permitted, namely, service by letters rogatory and service through Mexico’s Central Authority.
Martinez urges that service through an agent is neither permitted nor recognized by Mexican courts under Mexican law, and to comport with due process in Mexico, personal service must be accomplished through a court-appointed process server who is an employee of the court. Martinez contends that *5 under the law of Mexico, service may be made on a corporate employee only after two unsuccessful attempts at service have been made on an authorized legal representative of the corporation.
Puebla also submits the sworn statement of Tirso Sanchez De La Calleja (Calleja), a legal representative of Puebla in Mexico, who has legal power for litigation, collection and administration for Puebla. Calleja states that although Delgado’s documents were given to him on November 6, 2002, they were wrongly given to Quechol, who was not an employee of, and had no legal relationship with, Puebla.
Delgado opposes Puebla’s motion, asserting that personal service upon Puebla in Mexico through a privately retained Mexican attorney who acted as Delgado’s agent complied with the Hague Convention. Delgado also urges that the service comported with CPLR 311 (a), as Quechol was a “cashier or assistant cashier,” and Romo was entitled to rely on Quechol’s representation that he was authorized to accept service. Finally, Delgado asserts that the action should not be stayed or dismissed due to Puebla’s action in Mexico, as this action seeks relief different from that sought by Puebla.
III. Decision
Compliance with the Hague Convention is mandatory in all cases to which it applies, and the law of the judicial forum determines whether or not service abroad is necessary (see, Vazquez v Sund Emba AB, 152 AD2d 389, 394-395 [1989], citing Volkswagenwerk AG. v Schlunk, 486 US 694 [1988]). Here, all parties concede that service on Puebla in this country could not have been made. Accordingly, service abroad pursuant to the Hague Convention was a proper means of service (see, Vazquez v Sund Emba AB, supra).
As of June 1, 2000, Mexico became a signatory to the Hague Convention (see, NSM Music, Inc. v Alvarez, 2003 WL 685338, 2003 US Dist LEXIS 2964 [ND Ill 2003]). Articles 2 through 5 of the Hague Convention provide that a contracting state may designate a Central Authority through which service may be made in that country (see, Hague Convention, supra, arts 2-5). Articles 8 and 9 provide that absent stated opposition, each contracting state may effect service of judicial documents upon persons abroad directly through its diplomatic or consular agents, and may use consular channels to forward documents for the purpose of service to the authorities of another contracting state (see, Hague Convention, supra, arts 8-9; see also, Ackermann v Levine, 788 F2d 830, 838-839 [1986]).
Article 10 of the Hague Convention provides for alternate *6 forms of service in the absence of any objection by the state of destination, in this case, Mexico (see, Hague Convention, supra, art 10; see also, Wood v Wood, 231 AD2d 713 [1996], appeal dismissed 89 NY2d 1073 [1997], rearg denied 90 NY2d 936 [1997]; Ackermann v Levine, supra at 839). Article 10 of the Hague Convention states:
“Provided the State of destination does not object, the present Convention shall not interfere with—
“(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
“(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
“(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.” (Hague Convention, supra, art 10.)
As service by mail is not at issue in this case, the service at issue must be found to comport with article 10 (b) and (c).[1]
With respect to article 10 of the Hague Convention, Mexico made the following declaration:
“In relation to Article 10, the United Mexican States are opposed to the direct service of documents through diplomatic or consular agents to persons in Mexican territory according to the procedures described in sub-paragraphs a), b), and c), unless the judicial authority exceptionally grants the simplification different from the national regulations and provided that such a procedure does not contravene public law or violate individual guarantees. The request must contain the description of the formalities whose application is required to effect service of the document.” (Hague Conference on Private International Law, Instrument of Accession of Mexico, June 1, 2000 < www.hcch.net/e/status/stat 14e.html > [site accessed June 19, 2003].)
*7 Thus, the declaration by Mexico regarding article 10 addresses only direct service of documents through diplomatic or consular agents to persons in Mexican territory, and is silent as to any other form of service under article 10 (b) and (c) of the Hague Convention.
As Delgado notes, a United States Department of State Web site indicates that there are three methods by which service of process may be accomplished in Mexico, one being service by an agent (see, “International Judicial Assistance — Mexico,” <http://travel.state.gov/mexicoja.html> [State Department Web site]). That provision states (at [b]):
“[t]here is no provision in Mexican law specifically prohibiting service by agent, if enforcement of a judgment in Mexico courts is not anticipated. Personal service is accomplished by this method, wherein the Mexican attorney serves the document and executes an Affidavit of Service before a U.S. consul or vice-consul at the American Embassy or nearest consulate * *
Another section of the same State Department Web site concerns service by International Convention/Treaty and, with respect to service under the Hague Convention, refers only to service through the designated Central Authority in Mexico. Thus, the State Department Web site is silent on the issue of other possible modes of service under article 10 of the Hague Convention (see, State Department Web site, supra). The State Department Web site also states that if enforcement of a judgment in Mexican courts is anticipated, service of process by letters rogatory is the exclusive method to follow, since the Mexican courts will not recognize service by agent (see, State Department Web site, supra).
Although the State Department Web site is not controlling and lacks the force of law, it does reflect the State Department’s advice to practitioners on how personal service may be effectuated in Mexico, based upon the State Department’s interpretation of the law of Mexico (see, Vazquez v Sund Emba AB, supra).
Puebla’s argument that service of process by a privately retained process server is not permitted under the Hague Convention, because it does not comport with the internal law of Mexico concerning service of process, does have some support in legal commentaries (see, R. Kossick, Jr., Litigation in the United States and Mexico: A Comparative Overview, 31 U Miami Inter-Am L Rev 23, 44-45 [Spring 2000]). Nonetheless, *8 like the State Department Web site, Puebla’s evidence on this issue is not dispositive, as Mexico is a signatory to the Hague Convention and has made a declaration regarding article 10 (see, e.g., International Transactions, Ltd. v Embotelladora Agral Regionmontana S.A. de C.V., 2002 WL 413895, *1, 4 n 15, 2002 US Dist LEXIS 4239, *1, 17 n 15 [ND Tex 2002]). Although Puebla argues that service can only be effectuated under the Hague Convention through Mexico’s Central Authority, such an argument would render article 10 and Mexico’s declaration thereunder superfluous. Moreover, at least one author has chronicled the fact that the use of Mexico’s Central Authority for service of process may result in no service whatsoever (see, L.W. Newman, International Litigation, Service of Process in Latin America: Potential Pitfalls, NYLJ, Sept. 30, 2002, at 3, col 1).
Recently, one Federal District Court stated that in its accession to the Hague Convention, Mexico did not permit personal service via a privately retained process server; however, in making that finding, the Federal District Court cited only to articles 3 through 9 of the Hague Convention, and did not specifically address service by a privately retained process server under article 10 (b) and (c) (see, NSM Music, Inc. v Alvarez, supra).
In contrast, the Appellate Division, Second Department, has previously interpreted the failure of a country to expressly prohibit personal service under Hague Convention article 10 (b) and (c), as an indication that the country permits such service. The Second Department reasoned that had the country wished to oppose any method of service pursuant to article 10, it could have made an outright objection, as did other countries (see, Vazquez v Sund Emba AB, supra; compare, Wood v Wood, supra). Indeed, in one case involving service in Mexico prior to Mexico’s accession to the Hague Convention, the Appellate Division, Second Department, held that service by a privately retained attorney authorized to practice in Mexico might be a proper alternative to the form of service permitted under the Inter-American Convention and the Additional Protocol to the Inter-American Convention on Letters Rogatory (see, Laino v Cuprum S.A. de C.V., 235 AD2d 25, 27-28 [1997], citing Inter-American Convention on Letters Rogatory, May 8, 1979, S Treaty Doc No. 98-27 [entered into force Aug. 27, 1988] [reprinted following 28 USC § 1781]).
As Mexico did not expressly prohibit the private service of process through a privately retained agent/attorney in its declaration regarding article 10 of the Hague Convention, this *9 court finds that such service was proper under article 10 (b) or (c) of the Hague Convention (see, Laino v Cuprum S.A. de C.V., supra; Vazquez v Sund Emba AB, supra). The court makes this finding notwithstanding the risk to Delgado that any judgment it might obtain in this action may not be enforceable in Mexico (see, Laino v Cuprum S.A. de C.V., supra).
Moreover, Romo’s affidavit of service indicates that the receptionist at Puebla referred him to Quechol as the person who dealt with legal papers for Puebla, and Quechol identified himself as a Puebla assistant bookkeeper and authorized to accept service. Although Puebla now contends that Quechol was neither an employee nor authorized to accept service, it has not controverted Romo’s affidavit by submitting an affidavit by the receptionist or Quechol, the persons who were present when Romo arrived. Accordingly, Puebla has failed to raise any issue of fact regarding the propriety of service on its agent (see, Fashion Page v Zurich Ins. Co., 50 NY2d 265 [1980]; Arvanitis v Bankers Trust Co., 286 AD2d 273 [2001]; Hessel v Goldman, Sachs & Co., 281 AD2d 247 [2001], lv denied 97 NY2d 625 [2001]; Belluardo v Nationwide Ins. Co., 231 AD2d 661 [1996]; CPLR 311 [a] [1]; compare, Laino v Cuprum S.A. de C.V., supra at 32).
As Puebla acknowledges that it did receive the complaint and other documents, service was proper under CPLR 311 (a) (1) and notions of due process (see, e.g., Vazquez v Sund Emba AB, supra at 398). Accordingly, Puebla was properly served under the Hague Convention.
The court declines to dismiss the action pursuant to CPLR 3211 (a) (4) on the ground that there is another action pending between the parties for the same cause of action. The action filed in Mexico is limited in scope in that it seeks only to recover commissions earned by Puebla. The instant action, on the other hand, concerns the parties’ agreement as a whole and involves other causes of action based upon Puebla’s handling of, and payments from, the transmission accounts. Thus, the two actions and the relief sought by them are not the same or substantially the same (see, Zirmak Invs. v Miller, 290 AD2d 552 [2002]).
Conclusion
Accordingly, based upon the papers submitted to this court for consideration and the determinations set forth above, it is ordered that the motion by the defendant Casa de Cambio Puebla, S.A. de C.V., to dismiss the complaint for lack of *10 personal jurisdiction or due to the pendency of another action elsewhere, is denied.

. The issue of service by mail under article 10 (a) of the Hague Convention has often split both federal and New York State courts (see, e.g., Nuovo Pignone SpA v Storman Asia M/V, 310 F3d 374, 383-384, 384 n 14 [2002]; Ackermann v Levine, 788 F2d 830, 839 [1986]; Sardanis v Sumitomo Corp., 279 AD2d 225 [2001]).