[No. D041179. Fourth Dist., Div. One. Sept. 19, 2003.]

In re ALYSSA F., a Person Coming Under the Juvenile Court Law. SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. CHRISTINA R. et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Ordered certified for publication as to the introductory and Factual and Procedural Background sections, part II.B of the Discussion section, and the Disposition section: Parts I., II.A., III., and IV., are not included in the order of publication.

**COUNSEL**

Michael D. Randall and Roni Keller, under appointments by the Court of Appeal, for Defendants and Appellants.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Linda M. Fabian, under appointment by the Court of Appeal, for Minor.

## OPINION

**AARON, J.**—Pedro F. and Christina R. each separately appeal a judgment terminating their parental rights to their daughter, Alyssa F., under the Welfare and Institutions Code.[1] Pedro asserts the judgment should be reversed on the grounds that (1) the court had no subject matter jurisdiction because the case was subject to the Uniform Child Custody Jurisdiction and Enforcement Act (hereafter the Act);[2] (2) his due process rights were violated when he did not receive notice in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638) (hereafter the Hague Service Convention or the Convention); (3) he did not receive proper notice of most of the hearings; and (4) he was improperly denied the right to be represented by counsel at the section 366.26 hearing. Christina asserts the judgment must be reversed because (1) Pedro was not served in compliance with the Hague Service Convention; (2) the court exceeded its jurisdiction by making a true finding on the petition; and (3) she had a beneficial relationship with Alyssa within the meaning of section 366.26, subdivision (c)(1)(A). Each parent joins in the arguments of the other. Because we conclude the record is insufficiently developed to enable this court to determine whether the trial court had continuing subject matter jurisdiction under the Act as of January 2001, and because Pedro was not served in accordance with the Hague Service Convention, we reverse and vacate the jurisdictional and dispositional orders and all subsequent orders, including the judgment terminating parental rights. We direct the court to hold a special hearing to determine whether it had subject matter jurisdiction as of January 2001.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2000, Christina, Pedro, and three-year-old Alyssa were living together in Tijuana, Mexico. That month, Christina discovered Alyssa had been sexually abused. Believing Pedro and a friend of his were responsible, she filed charges against them with the Tijuana police. She also brought Alyssa to San Diego County and told a San Diego County Health and Human Services Agency (Agency) social worker that Alyssa had been sexually molested by Pedro and by a friend of his.[3] Christina identified Pedro as Alyssa's biological father.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Pedro contends the Uniform Child Custody Jurisdiction Act is the governing law. However, in 2000, California codified the Uniform Child Custody Jurisdiction and Enforcement Act in Family Code section 3400 et. seq. and repealed the act to which Pedro refers. (*In re C. T.* (2002) 100 Cal.App.4th 101, 106 [121 Cal.Rptr.2d 897].) We presume Pedro intended to argue the court had no jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.

[3] Christina and Alyssa are United States citizens.

The Women's Resource Center was going to give Christina and Alyssa a safe place to stay in the United States. However, an employee of that facility told a social worker she believed Christina intended to return to Tijuana with Alyssa because Christina thought she had not obtained concrete evidence the abuse had occurred, and because she did not want Pedro's family to be angry with her. The Agency removed Alyssa from Christina's custody and filed a section 300 petition on her behalf, asserting the child was in danger because she had been exposed to violent confrontations in the family home and had been sexually abused, and because Christina used methamphetamine.[4]

Christina provided an address for Pedro in Tijuana. The court sent Pedro, by first class mail, a copy of the minute order from the detention hearing, which contained the date of the jurisdictional hearing. The Agency left a message for Pedro, presumably by telephone, regarding the jurisdictional hearing. Although it is not clear from the record, we assume this message included the date and time of that hearing. In January 2001, the court made a true finding on each count in the petition. The same month, the court held the dispositional hearing, removed Alyssa from her parents' custody, and ordered reunification services for Christina. At the April 2002 12-month review hearing, the court terminated reunification services and scheduled a section 366.26 hearing. Pedro did not appear at any of the hearings.

At the September 2002 section 366.26 hearing, the court found Alyssa was adoptable. Finding none of the section 366.26, subdivision (c)(1) exceptions applied, the court terminated the parental rights of both Christina and Pedro.

DISCUSSION

I., II. A.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

B. *Pedro was not Properly Served Under the Hague Service Convention*

■ The fact that Pedro has generally appeared in this court does not retroactively cure the defects in service. (*Bank of America v. Carr* (1956) 138 Cal.App.2d 727, 735 [292 P.2d 587].) ■ The effect of the general appearance in this court is that, on remand, the trial court will have personal

---

[4] The Agency alleged Alyssa was at risk from domestic violence because Christina had reported that Pedro had physically abused her. The Agency alleged Alyssa was at risk from Christina's drug use because Christina tested positive for drugs after Ana F., Christina's youngest daughter, was born.

* See footnote, *ante*, page 846.

jurisdiction over Pedro without further service being required. (*Id.* at p. 739.) However, Pedro's general appearance here does not impact the merits of his argument that he is entitled to new jurisdictional and dispositional hearings because he was improperly served; it simply means that if we conclude service was in fact improper, the court will have personal jurisdiction over Pedro to conduct a new jurisdictional hearing and other proceedings.

The Hague Service Convention was "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698 [100 L.Ed.2d 722, 108 S.Ct. 2104].) ■ It applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." (*Id.* at p. 699; Hague Service Convention, *supra*, 20 U.S.T. 361, Art. 1.) Because juvenile dependency matters are civil in nature (*In re Patricia T.* (2001) 91 Cal.App.4th 400 [109 Cal.Rptr.2d 904]; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1247 [98 Cal.Rptr.2d 844]), the Convention applies to cases brought under section 300. Both the United States and Mexico are signatories to the Convention. (*Volkswagenwerk Aktiengesellschaft v. Schlunk, supra,* 486 U.S. at p. 698; *NSM Music, Inc. v. Alvarez* (N.D.Ill., Feb. 25, 2003, No. 02 C 6482) 2003 WL 685338, *1.)

■ Failure to properly serve a party who resides outside the country under the Hague Service Convention renders all subsequent proceedings void as to that person. (*Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1048 [12 Cal.Rptr.2d 861].) This is true even when the party indisputably had notice of the action. (*Id.* at p. 1049; *Floveyor International, Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 794 [69 Cal.Rptr.2d 457].)

■ Articles 2 through 6 of the Hague Service Convention establish a system whereby each participating country designates a "Central Authority" that receives and either rejects or executes requests for service of process. (*Balcom v. Hiller* (1996) 46 Cal.App.4th 1758, 1764 [54 Cal.Rptr.2d 536].) Pedro asserts all documents in this matter were improperly served because neither the Agency nor the court sent them to the designated authority in Mexico for service. Although neither the court nor the Agency sent documents to the Central Authority, the failure to do so does not necessarily void the judgment, because the Convention recognizes methods of service other than that set forth in articles 2 through 6. (*Balcom v. Hiller, supra,* 46 Cal.App.4th at p. 1764.)

Article 10 of the Hague Service Convention provides: "Provided the State of destination does not object, the present Convention shall not interfere with—[¶] (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, [¶] (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, [¶] (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." (Hague Service Convention, *supra*, 20 U.S.T. 361, Art. 10.)

The Agency contends service in this case is valid under Article 10(a) because the court sent Pedro notice of the jurisdictional and dispositional hearing by first class mail. "[N]o single provision in the Hague [Service] Convention has received as much judicial attention as Article 10(a)." *Randolph v. Hendry* (S.D.W.Va. 1999) 50 F.Supp.2d 572, 576. The courts of this country disagree as to whether the word "send" is a synonym for "service of process," or has a different meaning from the word "service." (*Id.* at pp. 576–577 and citations therein.) This disagreement extends to the courts of this state. (Compare *Honda Motor Co. v. Superior Court, supra,* 10 Cal.App.4th at p. [1049,12 Cal. Rptr.2d 861], *Suzuki Motor Co. v. Superior Court* (1988) 200 Cal.App.3d 1476, 1481–1484 [249 Cal.Rptr. 376] with *Shoei Kako Co. v. Superior Court* (1973) 33 Cal.App.3d 808, 821–822 [109 Cal.Rptr. 402].) The courts in California that have most recently addressed the issue have held that "send" is *not* equal to service of process. (*Honda Motor Co. v. Superior Court, supra,* 10 Cal.App.4th at p. 1049, *Suzuki Motor Co. v. Superior Court, supra,* 200 Cal.App.3d at pp. 1481–1484.)

This court has not addressed the issue whether the word "send" in Article 10(a) is synonymous with service of process. ■ However, we need not reach that issue here, because regardless of what the drafters of the Hague Service Convention meant by the word "send" in Article 10(a), service in Mexico must also be valid under California law. (*Volkswagenwerk Aktiengesellschaft v. Schlunk, supra,* 486 U.S. at p. 701; *Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1133 [53 Cal.Rptr.2d 215].)

■ The controlling provision of California law is former section 337.[9] That section provided that because Pedro was not present at the detention hearing, he had to receive notice of the jurisdictional and dispositional hearings personally or by certified mail, return receipt requested. (Former

---

[9] Section 337 was repealed and the Legislature enacted section 291 in 2002. (Stats. 2002, ch. 416, §§ 1, 6.)

§ 337, subds. (a), (b).) Neither service by first class mail nor the social worker leaving Pedro a telephone message constituted adequate service under California law.

■ Moreover, service had to be accomplished in a manner not objected to by Mexico. (*Honda Motor Co., v. Superior Court, supra,* 10 Cal.App.4th at pp. 1046–1047.) The Agency has not established that Mexico allows for service of process by regular mail or by telephone. "To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." (Hague Service Convention, *supra,* 20 U.S. T. 361, Art. 19.) ■ Mexico apparently does not prohibit service on a person by registered mail.[10] (*NSM Music, Inc. v. Alvarez, supra,* 2003 WL 685338, *2.) However, service of process by ordinary mail does not perfect service in Mexico. (*Hein v. Cuprum, S.A. de C.V.* (N.D.N.Y. 2001) 136 F.Supp.2d 63, 71.) The parties have not cited, and we have not located, any authority that Mexican law allows service of process by telephone. Service by first class mail on Pedro did not perfect service in Mexico. Because the Agency did not serve Pedro in

---

[10] Service of process may be accomplished in Mexico by: "(a). Service by international registered mail, return receipt requested. [¶] . . . [¶] (b). Service by agents, generally a Mexican attorney [¶] There is no provision in Mexican law specifically prohibiting service by agent, if enforcement of a judgment in Mexico courts is not anticipated. Personal service is accomplished by this method, wherein the Mexican attorney serves the document and executes an Affidavit of Service before a U.S. consul or vice-consul at the American Embassy or nearest consulate. . . . [¶] (c). Service by Letters Rogatory [¶] If enforcement of a judgment in Mexican courts is anticipated, service of process by letters rogatory is the exclusive method to follow, since the Mexican courts will not recognize service by international registered mail or by agent. [¶] (d). Service by International Convention/Treaty [¶] 1. The United States and Mexico are parties to the Inter-American Convention on Letters Rogatory, signed at Panama on January 30, 1975. . . . [¶] 2. Mexico acceded to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents on May 30, 2000. The Convention entered into force for Mexico on June 1, 2000. Under this Convention, requests for service are sent directly by the requester to the foreign central authority for service. In its instruments of accession to the Convention, Mexico declared the General Direction of Legal Affairs of the Ministry of Foreign Affairs (la Direccion General de Asuntos Juridicos de la Secretaria de Relaciones Exteriores) as the Central Authority to receive requests for service of judicial and extrajudicial documents coming from other Contracting States and which will in turn forward them to the competent judicial authority for its compliance. Documents to be served in Mexico must be translated into Spanish." (Fellas & Townsend, Selected Materials in International Litigation & Arbitration PLI Litigation Administrative Practice Course Handbook (Mar. 17–18, 2003) 689 PLI/Lit 13, *220–224.) This information is also available on the United States State Department's Web site at <http://www.travel.state.gov/mexicoja.htm> (see International Judicial Assistance—Mexico). (*Casa de Cambio Delgado, Inc. v. Casa de Cambio Puebla, S.A. de C.V.* (2003) 763 N.Y.S. 2d 434 [196 Misc.2d 1], 2003 N.Y. Slip.Op. 23557, 2003 WL 21146878, *4].) Although the State Department Web site is not authority and lacks the force of law, it reflects the State Department's advice to practitioners about service of process in Mexico. (*Ibid.*)

compliance with California law or Mexican law, the jurisdictional and dispositional orders are void. (*Honda Motor Co. v. Superior Court, supra*, 10 Cal.App.4th at p. 1048.)

A new jurisdictional hearing is necessary only if Pedro establishes himself as a presumed or biological father.[11] An alleged father is entitled to notice so that he may change his paternity status, but he has no standing to challenge other orders. (*In re O. S., supra*, 102 Cal.App.4th 1402, 1406, 1408 [126 Cal.Rptr.2d 571]; *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 596 [110 Cal.Rptr.2d 679]; *In re Joseph G.* (2000) 83 Cal.App.4th 712, 715–716 [99 Cal.Rptr.2d 915].) Because a speedy resolution of these issues is of paramount importance, Pedro must set a hearing to begin the process of establishing paternity within 30 days after the court determines it has subject matter jurisdiction. If he establishes paternity and the court determines it had continuing subject matter jurisdiction under the Act as of January 2001, the court shall hold a new jurisdictional hearing.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The jurisdictional and dispositional orders, all subsequent orders, and the judgment terminating Pedro's and Christina's parental rights are reversed and vacated. The court is directed to hold a special hearing to determine whether it had continuing subject matter jurisdiction over the matter as of January 2001 under the Uniform Child Custody Jurisdiction and Enforcement Act. After determining whether it had subject matter jurisdiction as of January 2001, the court shall proceed in accordance with the directions set forth in this opinion.

Benke, Acting P. J., and Haller, J., concurred.

Petitions for a rehearing were denied October 14, 2003, and the opinion was modified to read as printed above.

---

[11] The court terminated Pedro's rights as if he were a presumed father. However, the court never declared Pedro to be a presumed father. The Agency repeatedly refers to him as an alleged father and asserts that he had not taken steps to establish himself as a biological father. At the time Pedro's counsel was relieved because Pedro had made no contact with him, Pedro was still an alleged father. There is no indication Pedro appeared in the trial court after his counsel was relieved. Since Pedro had the burden to establish himself as a presumed father (*In re O. S.* (2002) 102 Cal.App.4th 1402, 1410 [126 Cal.Rptr.2d 571]), and did not do so, the court's termination of his parental rights as a presumed father was an error.

*See footnote, *ante*, page 846.